**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | | |
|---|---|---|
| **ROY TERRY SCOTT** | * | **CIVIL ACTION NO. 12-0730** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT & RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

**Background & Procedural History**

On May 20, 2010, Roy Terry Scott protectively filed the instant application for Title XVI Supplemental Security Income payments. (Tr. 99-103, 111). He alleged disability as of July 1, 2009, because of diabetes, high blood pressure, glaucoma, foot problems, behavioral problems, and problems with his left arm. (Tr. 111, 115).[1] The claim was denied at the initial stage of the administrative process. (Tr. 57-72). Thereafter, Scott requested and received a June 9, 2011, hearing before an Administrative Law Judge ("ALJ"). (Tr. 44-56). However, in a July 22, 2011, written decision, the ALJ determined that Scott was not disabled under the Act, finding at step

---

[1] A prior claim was denied initially on November 20, 2008, and not further appealed. (Tr. 58).

five of the sequential evaluation process that he was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 26-38). Scott appealed the adverse decision to the Appeals Council. On December 30, 2011, however, the Appeals Council denied Scott's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 18-20).

On March 23, 2012, Scott sought review before this court.[2] He alleges the following errors:

(1) the ALJ did not ensure that plaintiff knowingly and intelligently waived his right to counsel, thereby depriving plaintiff of a full and fair hearing, with resulting prejudice;

(2) for various reasons, the ALJ's residual functional capacity assessment is not supported by substantial evidence; and

(3) the ALJ's step five determination is deficient because a claimant with no past relevant work cannot make an adjustment to the skilled jobs identified by the vocational expert in response to the ALJ's hypothetical(s).

**Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant

---

[2] The Appeals Council extended Scott's time to file suit until 30 days after receipt of its March 7, 2012, letter. (Tr. 1-2).

evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

**Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## The ALJ's Findings

### I. Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that Scott had not engaged in substantial gainful activity during the relevant period. (Tr. 31). At step two, he found that he suffers severe impairments of Diabetes Mellitus – type II, with neuropathy; Glaucoma;

and Hypertension. *Id.*[3] He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 32).

**II. Residual Functional Capacity**

The ALJ next determined that Scott retained the residual functional capacity to perform light work,[4] except that the non-dominant upper extremity is limited to frequent reaching in all directions, handling, and fingering. (Tr. 33). Furthermore, Scott needed to avoid workplace hazards such as unprotected heights and dangerous moving machinery. *Id.*

**III. Step Four**

The ALJ concluded at step four of the sequential evaluation process that Scott had no past relevant work. (Tr. 37). Accordingly his proceeded to step five.

**IV. Step Five**

At this step, the ALJ determined that plaintiff was an individual closely approaching advanced age (50 years old), with a limited education, the ability to communicate in English, and

---

[3] The ALJ determined that Scott's depression – a medically determinable impairment – was non-severe. (Tr. 31-32).

[4] Light work entails:

> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

that transferability of skills was immaterial because of lack of past relevant work. (Tr. 37-38). The ALJ observed that given Scott's vocational factors, and with a residual functional capacity for the full range of light work, the Medical-Vocational Guidelines directed a finding of not disabled pursuant to 20 C.F.R. § 416.969; Rule 202.10, Table 2, Appendix 2, Subpart P, Regulations No. 4. *Id*. However, because plaintiff's ability to perform light work was reduced by further limitations, the ALJ employed vocational expert testimony to conclude that plaintiff could make an adjustment to other work that exists in substantial numbers in the national economy. *Id*.

In response to the ALJ's hypothetical(s), the vocational expert opined that the claimant could perform representative jobs such as dispatcher of motor transport, *Dictionary of Occupational Titles* ("DOT") Code 913.167-010 and dispatcher of auto rental DOT Code 249.167-014. *Id*. Combined, there are 112,099 dispatcher positions nationally, and 2,262 positions in Louisiana. (Tr. 38, 49). The vocational expert reduced those numbers by 65 percent to account for plaintiff's residual functional capacity. *Id*.

## **Discussion**

### I. Waiver of Right to Counsel and Resulting Prejudice

Social security claimants have a statutory right to counsel at any social security hearing. 42 U.S.C. § 406 (2003). Furthermore, a claimant is entitled to receive adequate notice of his right to counsel at an administrative hearing. *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003) (citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996). "Adequate notice" requires that an ALJ apprise the claimant: "(a) how an attorney can assist claimant in the hearing; (b) sources of free counsel and possibility of contingency arrangements; and (c) limitation of attorney fees to twenty-five percent of past due benefits." *Gullett v. Chater*, 973 F.Supp. 614, 620 (E.D.

Tex.1997) (citing *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir.1981)). "Adequate notice" may be established by several written notices, plus oral confirmation by the ALJ that plaintiff wishes to represent himself. *See Castillo, supra*.

Here, plaintiff received numerous written notices advising him of his right to representation. *See* Tr. 73-90. Moreover, on the day of the June 9, 2011, hearing, Scott signed a waiver of representation wherein he affirmed that he understood his right to representation at the hearing, voluntarily waived that right, asked to proceed without a representative, and acknowledged receipt of a list of organizations that provide legal services prior to the hearing. (Tr. 99).

At the hearing itself, the ALJ (consistent with his practice in other recent cases), stated in his opening remarks that plaintiff "appears pro se and has agreed to do so." (Tr. 46). This is the only mention of plaintiff's right to counsel anywhere in the transcript. There is no indication that the ALJ spoke with plaintiff concerning his right to counsel prior to going on the record. Moreover, while on the record, the ALJ did not ask plaintiff whether he had received the notices in the mail concerning his right to representation. The ALJ also did not ask plaintiff whether he understood the information contained in those notices.

This omission appears to conflict with the Commissioner's Hearings, Appeals and Litigation Law Manual ("HALLEX"), which specifies that "the ALJ should ensure on the record that the claimant has been properly advised of the right to representation and that the claimant is capable of making an informed choice about representation." *See* HALLEX I-2-6-52, 1993 WL 643033. Although the HALLEX does not carry the authority of law, the Fifth Circuit has held, in this regard, that "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be

required. If prejudice results from a violation, the result cannot stand." *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (internal citation omitted). In another similarly postured case, this court was unable to conclude that the claimant had validly waived his right to an attorney at the hearing. *See Morris v. Astrue*, Civil Action No. 09-1833 (W.D. La. Oct. 29, 2010, R&R).

Furthermore, when a claimant is unrepresented at the hearing, the ALJ's obligation to fully and fairly develop the record gives rise to a special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (citations omitted). The ALJ's failure to develop an adequate record does not automatically compel reversal. *Id*. Rather, "[a]s in the case of a hearing held without waiver of the right to counsel, the claimant must, in addition, show that []he was prejudiced as a result of [sic] scanty hearing. [H]e must show that, had the ALJ done his duty, []he could and would have adduced evidence that might have altered the result." *Kane supra* (internal quotation marks and citations omitted).

The court finds that Scott has demonstrated cognizable prejudice as a result of the ALJ's omissions in this case. Counsel enrolled on plaintiff's behalf roughly three months after the ALJ's unfavorable decision. *See* Tr. 21-24. Yet, within approximately one week after accepting representation, counsel was able to obtain medical source statements from plaintiff's treating physician, Papal Shedy, M.D., and a treating psychologist, Carl Van Frusha, Ph.D. (Tr. 12-16). On November 15, 2011, counsel advised the Appeals Council of this new evidence, but asked them to provide him with bar code pages so he could transmit the evidence to the Council. (Tr. 10). Instead, however, the Appeals Council proceeded to deny plaintiff's request for review, without providing the bar codes to counsel, and thus, without acknowledgment or consideration of the newly acquired evidence.

In the Fifth Circuit, evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision. *See Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); *Higginbotham v. Barnhart*, 163 Fed. Appx. 279, 2006 WL 166284 (5th Cir. 1/10/2006) (unpubl.) ("*Higginbotham II*").[5] Rather, the evidence constitutes part of the instant record and provides a basis for remand so long as it is new, material and related to the period before the ALJ's decision. *See Higginbotham, supra*; 20 C.F.R. § 404.970(b).[6]

Here, there is little question that the evidence that counsel attempted to submit to the Appeals Council meets the foregoing criteria. *See* Tr. 12-16. The medical source statements, and the information in them, were not before the ALJ at the time of his decision; therefore, they are new. Moreover, the medical source statements indicate limitations more restrictive than the ALJ's residual functional capacity assessment; thus, if credited in lieu of the consultative examinations, they likely would have changed the outcome of the ALJ's decision.[7] Finally, Drs.

---

[5] Despite the presence of new evidence in *Higginbotham*, the panel on subsequent appeal upheld the district court's decision to affirm the Commissioner's denial of benefits. *Higginbotham II.* The panel itself discounted a diagnosis of disability by claimant's treating physician as conclusory and unsupported. *Id*.

[6] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*, *Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs*., 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period. *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

[7] In fact, plaintiff contends that the mental limitations of functioning assigned by Dr. Van Frusha suffice to meet a listing at step three of the sequential evaluation process. At a minimum, Van Frusha's findings warrant reconsideration of plaintiff's mental impairment, given the findings by the consultative and agency psychologists, E. H. Baker, Ph.D. and Julia Wood, Ph.D., respectively, that there was insufficient evidence to credit plaintiff's depression because he

Shedy and Van Frusha indicated that their medical source statements reflected plaintiff's condition during the relevant period. (Tr. 12-16). Of course, further compounding the error below is that, by all accounts, the Appeals Council did not even consider the new evidence.[8]

In addition to the prejudice suffered by plaintiff because of the medical evidence that was not presented below, plaintiff was further prejudiced by the lack of opportunity to effectively cross-examine the vocational expert. Despite finding that plaintiff had no past relevant work because it did not rise to the level of substantial gainful activity, the ALJ accepted, without development, facially inconsistent testimony from the vocational expert to the effect that because plaintiff had a "background as an auto mechanic," he acquired certain unspecified skills that permitted him to make an adjustment to other skilled work as a dispatcher. (Tr. 49). However, there is no indication in the hearing transcript that the ALJ afforded plaintiff an opportunity to cross-examine the vocational expert. Moreover, had plaintiff enjoyed representation at the hearing, the representative could have questioned the vocational expert as to the basis for his opinion, and asked him to identify the transferrable skills that plaintiff acquired from his relatively brief stints in the auto repair business. (Tr. 116, 122).

## II. Physical Residual Functional Capacity Assessment

At the time of the ALJ's decision, the record contained reports from consultative physicians, David Hebert, M.D., and Ajay Ravi, M.D. (Tr. 187-190, 206-210). The former did not find much wrong with Scott, and assigned a lifting ability that suggested an exertional

---

malingered during the consultative mental status examination. *See* Tr. 275-276, 63

[8] When the Appeals Council considers additional evidence that it deems insufficient to warrant remand, it will state in conclusory fashion that "we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision."

capacity for medium work. (Tr. 187-190). However, the ALJ did not discuss Dr. Hebert's findings – likely because Hebert rendered his opinion on October 10, 2008, which is outside the relevant period at issue in this case.

Dr. Ravi examined Scott on August 21, 2010, and diagnosed hypertension, diabetes, flexion deformity of the second digit of the left hand, and left arm deformity secondary to remote gunshot wound with intact motor strength. (Tr. 206-210). Ravi opined that Scott would have mild to moderate limitations in using his left hand and arm; otherwise, he should be able to sit, walk and/or stand for a full workday lift/carry objects without limitation with his right hand, hold a conversation, respond appropriately to questions, and carry out and remember instructions. *Id*. He exhibited a normal range of motion in all joints. *Id*.

A non-examining agency physician, Jeffrey Faludi, M.D., endorsed a physical residual functional capacity assessment that was premised upon Dr. Ravi's examination findings. *See* Tr. 64, 211-212. Faludi interpreted Dr. Ravi's "mild to moderate limitation" to his left hand as limiting plaintiff to *occasional* reaching of the left arm and *occasional* fine/gross manipulation of left hand. *See* Tr. 64, 211-212.[9]

In his decision, the ALJ accorded "great weight" to the opinion of Dr. Ravi and "significant weight," to the findings of Dr. Faludi. (Tr. 35-36). Although the ALJ acknowledged that Dr. Faludi recognized that Scott's ability to reach and manipulate was limited, the ALJ did not document in his decision that Faludi had endorsed a finding limiting Scott to occasional reaching of the left arm and occasional manipulation of the left hand. Indeed, in his hypothetical to the vocational expert, the ALJ appeared to interpret Dr. Faludi's residual functional capacity assessment as limiting the claimant to *frequent* reaching and manipulation of the non-dominant

---

[9] At one time, Dr. Faludi appeared to be considering an exertional capacity for medium work, but ultimately signed off on a residual functional capacity assessment for a reduced range of light work. *See* Tr. 212.

hand and arm. (Tr. 48-49).

The Commissioner argues in his brief that Dr. Ravi's "mild to moderate" limitation of the left upper extremity provides substantial support for the ALJ's *frequent* limitation of this limb. However, Dr. Faludi interpreted the same report by Dr. Ravi as limiting plaintiff to occasional use of the left arm and hand. Given that Dr. Faludi is an agency medical consultant and the ALJ is not a medical professional at all, the court does not readily discern how it can credit the ALJ's supposed interpretation of Dr. Ravi's report over the interpretation accorded by Dr. Faludi. To the extent that Dr. Ravi's report remains ambiguous, the issue may be remedied upon remand by asking Dr. Ravi to complete a medical source statement that clarifies the nature and extent of plaintiff's left arm limitation.[10]

The court further finds that the ALJ's apparent misinterpretation of the medical evidence materially affected his decision. According to the DOT, if plaintiff were reduced to occasional reaching with his left arm, then he would be unable to perform the jobs identified by the vocational expert, as relied upon by the ALJ in his decision. *See DOT* Code 913.167-01, 1991 WL 687818 and DOT Code 249.167-014, 1991 WL 672312; Pl. Brief, Exhs. A & B.

**Conclusion**

For the foregoing reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings

[10] Of course, if, on remand, the Commissioner were to assign "controlling weight" to the opinions of plaintiff's treating providers, then Dr. Ravi's findings may prove superfluous and redundant.

consistent herewith.[11]

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED, in chambers, at Monroe, Louisiana, this 22nd day of January 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

[11] The court need not address plaintiff's remaining assignments of error; they may be addressed upon remand.